## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **THALIA D. WAGONER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-16-1014-C** |
| | ) | |
| **NORMAN PUBLIC SCHOOLS,** | ) | |
| | ) | |
| **Defendant.** | ) | |

---

## DEFENDANT NORMAN SCHOOL DISTRICT'S MOTION FOR
## SUMMARY JUDGMENT WITH COMBINED BRIEF IN SUPPORT

---

**Date:  July 31, 2017**

Karen L. Long, OBA No. 5510
John E. Priddy, OBA No. 13604
Jerry A. Richardson, OBA No. 10455
Staci L. Roberds, OBA No. 18985
525 South Main, Suite 700
Tulsa, OK  74103
Telephone:  (918) 585-9211
Facsimile:  (918) 583-5617

**Attorneys for Defendant**
**Norman School District**

# TABLE OF CONTENTS

Table of Authorities ................................................................................. ii

DEFENDANT NORMAN SCHOOL DISTRICT'S MOTION FOR SUMMARY
JUDGMENT WITH COMBINED BRIEF IN SUPPORT ....................................... 1

Statement of Uncontroverted Material Facts ............................................. 2

Argument and Authorities   ...................................................................... 15

I.      The School District is Entitled to Judgment as a Matter of Law on
        Wagoner's Title VII and ADA Claims ............................................ 15

        A.      Wagoner's Race Discrimination Claim Under Title VII .................... 16

        B.      Wagoner's Disability Discrimination Claims Under the ADA ............ 19

        1.      Disability discrimination based on the failure to accommodate .......... 20

        2.      Disability discrimination based on termination ................................. 22

II.     The School District Is Entitled to Judgment as a Matter of Law on
        Wagoner's Fourteenth Amendment Due Process Claim ................................ 24

III.    Wagoner's OADA Claim Fails as a Matter of Law ......................................... 26

IV.     Wagoner's Breach of Contract Claim Fails as a Matter of Law ..................... 27

Conclusion ................................................................................................. 28

Certificate of Service ................................................................................. 29

# TABLE OF AUTHORITIES

**Cases**

*Allen v. SouthCrest Hosp.*,
      455 Fed. Appx. 827 (10th Cir. 2011) .............................................. 20

*Bartee v. Michelin North American, Inc.*,
      374 F.3d 906 (10th Cir. 2004) ...................................................... 21

*Bennett v. Windstream Communications, Inc.*,
      30 F. Supp.3d 1243 (N.D. Okla. 2014) .......................................... 27

*Board of Regents v. Roth*,
      408 U.S. 564 (1972) ...................................................................... 25

*Bones v. Honeywell Intern., Inc.*,
      366 F.3d 869 (10th Cir. 2004) ...................................................... 23

*Brammer-Hoelter v. Twin Peaks Charter Academy*,
      492 F.3d 1192 (10th Cir. 2007) .................................................... 25

*Digital Design Group, Inc. v. Information Builders, Inc.*,
      24 P.3d 834 ................................................................................... 27

*EEOC v. C.R. England, Inc.*
      644 F.3d 1028 (10th Cir. 2011) ............................................... 15, 20

*EEOC v. PVNF, L.L.C.*
      487 F.3d 790 (10th Cir. 2007) ...................................................... 16

*Faragalla v. Douglas County Sch. Dis. RE 1,*
      411 Fed. Appx. 140 (10th Cir. 2011) ......................................... 16-17

*Hamilton v. Oklahoma City University,*
      911 F. Supp. 2d 1199 (W.D. Okla. 2012) ...................................... 26

*Hennagir v. Utah Dep't of Corrections*,
      587 F.3d 1255 (10th Cir. 2009) .................................................... 22

*Hinds v. Sprint/United Mgmt. Co.*,
      523 F.3d 1187 (10th Cir. 2008) .................................................... 15

*Johnson v. Weld County, Colo.*,
    594 F.3d 1202 (10th Cir. 2010) ....................................................................... 15

*Jones v. United Parcel Serv.*, ................................................................................ 19
    502 F.3d 1176 (10th Cir. 2007)

*Kellogg v. Energy Safety Servs., Inc.*,
    544 F.3d 1121 (10th Cir. 2008) ....................................................................... 22

*Khalik v. United Air Lines*,
    671 F.3d 1188 (10th Cir. 2012) ....................................................................... 15

*McCully v. American Airlines, Inc.*,
    695 F. Supp. 2d 1225 (N.D. Okla. 2010) ................................................... 26-27

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792 (1973) ........................................................................................ 15

*McKnight v. Kimberly Clark Corp.*,
    149 F.3d 1125 (10th Cir. 1998) ....................................................................... 15

*Montgomery v. City of Ardmore*,
    365 F.3d 926 (10th Cir. 2007) ....................................................................... 25

*Morgan v. Hilti, Inc.*,
    108 F.3d 1319 (10th Cir. 1997) ....................................................................... 23

*Montes v. Vail Clinic, Inc.*,
    497 F.3d 1160 (10th Cir. 2007) ....................................................................... 20

*Orr v. City of Albuquerque*,
    417 F.3d 1144 (10th Cir. 2005) ....................................................................... 16

*Piercy v. Maketa*,
    480 F.3d 1192 (10th Cir. 2007) ....................................................................... 17

*Ripley v. Wyoming Medical Center, Inc.*,
    559 F.3d 1119 (10th Cir. 2009) ....................................................................... 25

*Seabourn v. Independent Sch. Dist. No. I-300 Woodward County*,
    775 F. Supp. 2d 1306 (W.D. Okla. 2010) ...................................................... 25

*Selenke v. Medical Imaging of Colorado*,
  248 F.3d 1249 (10th Cir. 2001) ........................................................ 23

*Shikles v. Spring/United Management Co.*,
  426 F.3d 1304 (10th Cir. 2005) ........................................................ 19

*Templeton v. Neodata Services, Inc.*,
  162 F.3d 617 (10th Cir. 1998) ......................................................... 21

*Zamora v. Elite Logistics, Inc.*,
  478 F.3d 1160 (10th Cir. 2007) ........................................................ 15

**Statutes and Rules**

29 C.F.R. § 1630.2(o)(3) .................................................................... 21

29 U.S.C. § 2611(2)(A) ..................................................................... 22

42 U.S.C. § 2000e-2 ............................................................................ 1

42 U.S.C. § 1983 ................................................................................. 1

42 U.S.C. § 12101 ............................................................................... 1

42 U.S.C. § 12112(b)(5)(A).............................................................. 20

FED. R. CIV. P. 56 ............................................................................... 2

OKLA. STAT. tit. 25, § 1301 ................................................................ 1

OKLA. STAT. tit. 25, § 1302 .............................................................. 26

OKLA. STAT. tit. 25, § 1350 .............................................................. 26

OKLA. STAT. tit. 70, § 6-101.22(B) ............................................. 25, 27

OKLA. STAT. tit. 70, § 6-101.23(B) ............................................. 25, 27

OKLA. STAT. tit. 70, § 6-101.25 .................................................. 25, 28

OKLA. STAT. tit. 70, § 6-101.26 .................................................. 26, 28

**Other**

LCvR 56.1(b) ............................................................................................................ 2

**DEFENDANT NORMAN SCHOOL DISTRICT'S MOTION FOR
SUMMARY JUDGMENT WITH COMBINED BRIEF IN SUPPORT**

The Defendant, Independent School District No. 29 of Cleveland County, Oklahoma, commonly referred to as "Norman Public Schools" (the "School District" or the "District"), respectfully submits for the court's consideration its motion for summary judgment with combined brief in support.

The Plaintiff, Thalia Wagoner ("Wagoner"), was previously employed by the School District as a probationary teacher in the position of English Language Learners ("ELL") Newcomer and was on a temporary teacher contract. In November of 2015, the School District's Superintendent Joe Siano recommended to the Board of Education that Wagoner be dismissed from her employment with the District. Wagoner was suspended with pay and benefits pending a due process hearing before the Board of Education. She filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").

In her First Amended Complaint, Wagoner alleges federal claims for race discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2, disability discrimination under the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 *et seq*., and a claim for violation of her Fourteenth Amendment right to due process under 42 U.S.C. § 1983. Wagoner also alleges state law claims under the Oklahoma Anti-Discrimination Act ("OADA"), OKLA. STAT. tit. 25, § 1301 *et seq*., and a claim for breach of contract.

The School District now moves for summary judgment pursuant to Rule 56, FED. R. CIV. P., and LCvR 56.1(b), on all of Wagoner's claims.

## Statement of Uncontroverted Material Facts

Pursuant to LCvR 56.1(b), the School District submits the following statement of undisputed material facts:

1.     Wagoner, an African-American, interviewed for the ELL Newcomer positon on approximately August 20, 2015.  Janet Gorton, the District's Coordinator for World Languages and English Language Learners, participated in Wagoner's interview, at which time she provided Wagoner with an overview of the position and its required responsibilities.  After the interview, Gorton believed Wagoner was qualified to perform the duties of the position.  Deposition of Thalia Wagoner, p. 148, lines 15-21 (Exhibit 1 to this brief); Transcript of Due Process Hearing for Thalia Wagoner, p. 3, lines 18-25; p. 4, lines 4-7; p. 45, line 10 through p. 46, line 2 (Exhibit 2 to this brief).

2.     Wagoner was hired by the School District for the ELL Newcomer positon, which was full-time position.  She was placed on a temporary teacher contract for the school year, which under state law entitled her to certain due process rights prior to dismissal.  Wagoner, p. 34, line 3-8; p. 37, line 1 through p. 38, line 23; p. 39, lines 11-15; Wagoner Deposition Exhibit 1 (Temporary Teacher Contract).

3.     Wagoner was assigned to Wilson Elementary.   The ELL Newcomer position was the only position of its kind in the District and had previously been located at another elementary school.  Because of construction taking place at that school, the District decided to relocate the position to Wilson Elementary for the 2015-2016 school

year, as Wilson had available space and was centrally located for students. The ELL materials were moved to Wilson Elementary from the other school. Wagoner, p. 40, lines 5-10; p. 41, lines 12-20; p. 51, lines 13-15; Transcript of Due Process Hearing, p. 47, lines 1-19.

4.     At the time Wagoner was hired by the School District in August of 2015, school had already started for the year. Wagoner was to start work on September 1, 2015, but her first class with students would not begin until September 22, 2015, approximately three weeks after her start date. Wagoner, p. 37, line 24 through p. 38, line 10; p. 48, lines 10-23.

5.     On September 1, 2015, Wagoner reported for work and met with Gorton, the ELL program supervisor, Mary Freiburger, an ELL teacher who taught at Wilson and another school site, and Shannon Benda, who served as Gorton's secretary. Gorton advised Wagoner that because students would be arriving in three weeks that Wagoner needed to prepare her materials for students and organize her classroom. She also was told that custodial and warehouse staff would help her move items to and from her classroom in order to have it ready for students. Wagoner, p. 52, lines 1-8; p. 53, lines 2-6; p. 53, line 20 through p. 54, line 1; p. 59, lines 3-19; p. 59, line 25 through p. 60, line 14; p. 135, line 21 through p. 136, line 3; Transcript of Due Process Hearing, p. 46, lines 3-23; p. 48, lines 6-17; Exhibit 4 to Transcript (ELL Newcomer Position Timeline).

6.     Gorton also told Wagoner that Freiburger would assist her in settling into her new position, acting as a mentor, and that Benda could offer assistance with materials

and getting her classroom organized.  <u>Wagoner</u>, p. 54, line 15 through p. 55, line 3; p. 59, lines 20-24; <u>Transcript of Due Process Hearing</u>, p. 47, line 20 through p. 48, line 5.

7.     Freiburger, a Caucasian, assisted Wagoner with sorting and reviewing ELL materials, organizing, and setting up her classroom for students, even though Freiburger had her own duties to perform associated with her ELL teaching position.  Freiburger also introduced Wagoner to other ELL teachers in the District, who provided Wagoner with some materials and assistance in her new position.  <u>Wagoner</u>, p. 60, lines 15-21; p. 62, lines 8-14; p. 65, line 12 through p. 66, line 18; p. 133, lines 4-12.

8.     Prior to being hired by the District, Wagoner testified she suffered from a history of uterine fibroids, for which she had undergone surgery, and a history of anxiety and depression, for which she had received counseling and taken medication.  However, during her meeting with Gorton, Freiburger, and Benda on September 1, 2015, Wagoner never told them she had any physical or mental limitations that required she receive assistance in order to perform her job.  <u>Wagoner</u>, p. 58, lines 13-24; p. 106, lines 1-13; p. 108, line 16 through p. 109, line 9; p. 111, line 20 through p. 112, line 3; p. 114, lines 11-22; p. 115, line 6 through p. 116, line 7; p. 118, lines 10-13.

9.     Wagoner knew shortly after she was hired (and definitely prior to the time students arrived for class instruction) that part of her job duties included the development of an ELL curriculum for her students and lesson plans from the material provided to her by the District.  Wagoner was provided with numerous materials and support leading up to her first class on September 22, 2015.  <u>Transcript of Due Process Hearing</u>, p. 9, lines 8-

17; p. 10, lines 4-7; p. 46, lines 3-9; p. 48, line 18 through p. 50, line 12; Exhibit 4 to Transcript.

10.    Wagoner's weekly schedule required that she arrive at school by 7:25 a.m. On Tuesdays and Thursdays her students from other school sites in the District would arrive by bus at Wilson at approximately 8:40 a.m.   Wagoner was to meet her elementary-aged students (approximately fifteen) at the bus stop and walk them to the classroom.  She only had the students for classroom instruction between two and two and one half hours on these days.  The students also had specials, including physical education and music, and lunch and recess.  Her students usually left Wilson to return to their home school sites around 1:40 p.m.   Wagoner's school day ended at 3:10 p.m.  Wagoner, p. 41, line 21 through p. 43, line 9; p. 44, lines 6-11; lines 19-23; p. 45, lines 3-8; p. 46, lines 7-19; Transcript of Due Process Hearing, p. 30, lines 2-8; p. 30, line 19 through p. 31, line 7.

11.    On Mondays, Wednesdays, and Fridays, Wagoner was required to do visits with her students at their home sites.  She was expected to coordinate times with the students' classroom teachers and then go to the site and meet with the students.  Wagoner, p. 46, line 20 through p. 47, line 1; p. 51, lines 1-8.

12.    Wagoner's other responsibilities included attending staff meetings, training, developing curriculum, and lesson planning.  She was required to prepare lesson plans for her Tuesday and Thursday classes.  Wagoner, p. 47, lines 10-18; p. 48, lines 5-9.

13.    Wagoner's first class was on September 22, 2015.  Her second class was scheduled for September 24, 2015.  Wagoner called in that morning and reported to Chris

Crelia, the Principal of Wilson Elementary, that she was not prepared for class that day and was not feeling well.  Wagoner called Gorton later that afternoon regarding the call in procedure, and Gorton informed Wagoner that she had not followed the proper procedure, which had resulted in her students arriving to no supervision and that another ELL teacher taught her class.  Gorton advised Wagoner to arrive at school the next day at 7:25 a.m., and she would be notified of when to meet with Gorton and Principal Crelia.  Wagoner, p. 40, lines 5-18; p. 66, lines 19-22; p. 67, lines 7-24; Transcript of Due Process Hearing, p. 46, lines 3-9; p. 50, line 22 through p. 52, line 9; Exhibit 4 to Transcript.

14.    On September 24, 2015, when Wagoner called in and missed class, she did not share with Crelia or Gorton that she was suffering from any medical issues or that she was battling depression.  Wagoner, p. 68, lines 9-19; Transcript of Due Process Hearing, p. 93, lines 9-18.

15.    Wagoner returned to Wilson on September 25, 2015, at which time she met with Gorton and Crelia.  In addition to discussing her absence, Gorton and Crelia discussed expectations for lesson plans and site visit timesheets.  Wagoner was provided with copies of templates for both lesson plans and site visit timesheets, and they were discussed with her.  Wagoner, p. 68, line 20 through p. 69, line 1; Transcript of Due Process Hearing, p. 8, lines 11-19; p. 46, lines 3-9; p. 52, line 10 through p. 53, line 15; Exhibit 4 to Transcript.

16.    On September 26, 2015, Gorton sent Wagoner an email to document expectations for Wagoner going forward.  She attached the templates for the lesson plans

and site visit timesheets discussed with Wagoner at their meeting.  The email also directed Wagoner to submit her lesson plans on Monday morning by 8:30 a.m.  It further included a schedule outlining which students and sites Wagoner should visit on Monday.  Wagoner received the email from Gorton.  Transcript of Due Process Hearing, p. 46, lines 3-9; p. 53, line 22 through p. 54, line 9; Exhibit 4 to Transcript; Wagoner, p. 69, lines 2-15; p. 77, lines 4-15.

17.     On Monday, September 28, 2015, Wagoner did not submit her lesson plans by 8:30 a.m. nor did she visit any students at their school sites.  Principal Crelia spoke with Wagoner about her lesson plans that afternoon, and she indicated she had a doctor's appointment, but she would be ready for class.  When lesson plans had not been received from Wagoner by 9:00 p.m. that night, her class for the following day was cancelled.  She submitted her lesson plans at 9:47 p.m.  Transcript of Due Process Hearing, p. 46, lines 3-9; p. 54, lines 10-24; Exhibit 4 to Transcript; Wagoner, p. 77, line 20 through p. 78, line 15.

18.     On October 6, 2015, Wagoner notified Gorton's secretary Shannon Benda that she would be absent.  When asked if she was ill, Wagoner indicated she was not prepared for class.  Transcript of Due Process Hearing, p. 46, lines 3-9; Exhibit 4 to Transcript.

19.     Wagoner consistently failed to submit timely lesson plans or site visit schedules to Gorton from September 29, 2015, through October 7, 2015.  Transcript of Due Process Hearing, p. 46, lines 3-9; p. 54, line 18 through p. 55, line 15; Exhibit 4.

20.     On October 12, 2015, Wagoner met with Gorton and Jason Brown, the District's Assistant Superintendent of Personnel Services.  Brown notified Wagoner that she was being suspended by the District with pay and benefits.  Wagoner, p. 73, line 1 through p. 74, line 10; p. 74, lines 15-18; Wagoner Deposition Exhibit 2 (Notice of Suspension with Pay); Transcript of Due Process Hearing, p. 16, line 21 through p. 17, line 7.

21.     Gorton emailed Wagoner on October 15, 2015, advising her that lesson plans for her two classes the upcoming week and her schedule for student visits at their home sites would be due on Monday, October 19, 2015, by 8:30 a.m.  The email also included lesson plan templates and an updated spreadsheet of students.  Transcript of Due Process Hearing, p. 46, lines 3-9; Exhibit 4 to Transcript.

22.     On October 19, 2015, Wagoner submitted lesson plans for only her Tuesday class.  That same day Gorton and Crelia met with Wagoner at which time she received a written Admonishment (with Improvement Plan), which they discussed with her.  During the meeting, Wagoner never stated that she had received inadequate support from Gorton, Freiburger, or anyone else.  Wagoner, p. 74, line 19 through p. 75, line 19; Wagoner Deposition Exhibit 3 (Admonishment (with Improvement Plan)); Transcript of Due Process Hearing, p. 46, lines 3-9; p. 55, lines 16-21, p. 93, lines 2-8; Exhibit 4 to Transcript.

23.     Wagoner received advice and suggestions from Gorton about lesson plans and her classroom management, including receipt of "numerous" emails, with some of them including feedback.  Gorton also observed Wagoner in the classroom and provided

8

feedback.  Wagoner also received support from Freiburger and Crelia.  <u>Wagoner</u>, p. 71, lines 5-16; <u>Transcript of Due Process Hearing</u>, p. 13, lines 8 through p. 14, line 8; p. 57, line 24 through p. 58, line 19.

24.     The Admonishment (with Improvement Plan) outlined in detail Wagoner's areas of deficiency in her job performance.  It also outlined the level of performance the District expected from Wagoner going forward, including that she submit lesson plans to Gorton every Monday by 8:30 a.m.; be on time, without reminders, to all student activities; use her sick leave appropriately and follow stated procedure if unable to report to work; and submit a weekly schedule, including proposed site visits and other activities to Gorton every Monday by 8:30 a.m.  Further, Wagoner was to meet with Gorton every Monday morning at 8:30 a.m. to review her lesson plans, proposed schedule, and to discuss her performance.  Finally, it informed Wagoner that her failure to correct the deficiencies or to follow the directives of the plan could result in a recommendation for her dismissal.  <u>Wagoner</u>, p. 75, line 24 through p. 79, line 9; p. 82, line 7 through p. 85, line 14; Wagoner Deposition Exhibit 3.

25.     Wagoner submitted timely lesson plans for October 27 and October 29; however, her site visit schedule was untimely.   Wagoner also failed to attend her scheduled meeting with Gorton on Monday, October 26, as required by her Admonishment (Improvement Plan).  <u>Transcript of Due Process Hearing</u>, p. 46, lines 3-9; Exhibit 4 to Transcript.

26.     On the afternoon of October 28, 2015, Wagoner contacted Principal Crelia, informing him she did not feel well and would not be at the faculty meeting later that day.

Wagoner did not specifically tell him she suffered from any type of medical condition.  Transcript of Due Process Hearing, p. 46, lines 3-9; p. 93, line 24 through p. 94, line 12; Exhibit 4 to Transcript; Wagoner, p. 143, line 24 through p. 144, line 11.

27.    Wagoner met with Gorton on November 2, 2015.  Although Wagoner had timely submitted lesson plans for her November 3 class, she did not timely submit lesson plans for her November 5 class, nor did she submit the schedule for her student site visits.  Wagoner submitted the lesson plans and schedule later that day, but she did not conduct any site visits that day.  During their meeting, Gorton and Wagoner discussed her lesson planning, classroom management, and class room layout.  Transcript of Due Process Hearing, p. 46, lines 3-9; Exhibit 4 to Transcript.

28.    Wagoner also met with Crelia on November 2, 2015, at which time he informed her that she had not made satisfactory progress regarding the items included in her Admonishment (Improvement Plan), including submitting timely lesson plans and site visit schedules.  At no time during the meeting or at any other time did Wagoner advise Crelia that she had any type of medical condition or that she was not receiving the appropriate support for her job.  Transcript of Due Process Hearing, p. 93, lines 9-18; p. 94, line 15 through p. 95, line 2.

29.    On November 9, 2015, Wagoner met with Gorton for their weekly meeting.  Although she remembered being told to complete student visitation logs with regard to her site visits the prior week, she did not provide the logs because she had not completed the visits.  Wagoner, p. 87, lines 15-25; Transcript of Due Process Hearing, p. 46, lines 3-9; Exhibit 4 to Transcript.

30.    On November 11, 2015, Assistant Superintendent Brown notified Wagoner that she was being suspended with pay and benefits for a second time.  He also notified Wagoner that the District's Superintendent would be recommending her dismissal to the Board of Education.    Wagoner did not tell Brown or anyone else in District administration that she was suffering from any medical or mental health issues, because she had not yet made the connection between how she was feeling and her work conditions.  Wagoner, p. 89, line 6 through p. 90, line 10; p. 142, line 4 through p. 143, line 7; Wagoner Deposition Exhibit 4 (Notice of Suspension); Wagoner Deposition Exhibit 11 (Letter of Nov. 18, 2015).

31.    On November 18, 2015, Wagoner received a letter from Brown by hand delivery in response to a telephone call she made to him that same day requesting paperwork for leave under the Family Medical Leave Act ("FMLA").  This was the first time Wagoner had ever requested FMLA leave from the School District, and it was the first time Wagoner had told Brown that she suffered from a medical condition.  In his letter, Brown notified Wagoner, as he did in his conversation with her earlier that day, that she was not eligible for FMLA leave because she had not been employed by the District for one year.  Wagoner, p. 102, line 3 through p. 104, line 22; p. 124, line 21 through p. 125, line 17; Wagoner Deposition Exhibit 11.

32.    On November 19, 2015, Superintendent Joe Siano recommended Wagoner's dismissal to the District's Board of Education.  In the recommendation, Siano stated the cause for Wagoner's dismissal was her poor teaching performance and her failure to make adequate improvement, upon receiving continued support and assistance

11

from administration to do so.  He referenced specific examples of Wagoner's failure to timely submit weekly lesson plans for her two days of classes per week, her failure to submit a timely schedule of proposed site visits for her three traveling days, her improper use of leave and improper call-in procedure, her failure to attend a scheduled meeting with her supervisor to discuss performance issues, her failure to report to work at the required time, and her lack of attention to students.  Wagoner, p. 90, line 11 through p. 91, line 18; Wagoner Deposition Exhibit 5 (Recommendation for Dismissal).

33.    On November 20, 2015, the Notice of Superintendent's Recommendation for Dismissal and Termination and Notice of Hearing was personally delivered to Wagoner.  Superintendent Siano's recommendation to the Board of Education was attached, along with notice to Wagoner that a hearing regarding the recommendation would be held on December 17, 2015, and also providing the location and time for the hearing.  The letter further advised Wagoner of her right to appear at the hearing, that the board would present its case against her, and that she had the right to be represented by counsel, to question witnesses, and to present her own witnesses and evidence to the Board.  Wagoner, p. 91, line 23 through p. 94, line 4; Wagoner Deposition Exhibit 6 (Notice of Superintendent's Recommendation for Dismissal and Termination; Notice of Hearing).

34.    On December 8, 2015, Brown sent Wagoner another letter reiterating the procedures that would be followed at the board hearing and again notifying her of her right to be present at the hearing and be represented by counsel, her right to present evidence and witnesses on her own behalf, and her right to a decision by an impartial

Board based upon the evidence presented.   Brown also disclosed to Wagoner the witnesses the District might call and a list of possible exhibits the District could utilize at the hearing.  The letter further requested that Wagoner provide a list of her witnesses and exhibits five days prior to the hearing.  Wagoner, p. 94, line 25 through p. 95, line 23; Wagoner Deposition Exhibit 7 (Notice of Hearing Procedures).

35.     On December 11, 2015, Brown sent Wagoner another letter notifying her that the District might also call her as a witness before the Board of Education and it might utilize a timeline of events as an exhibit.  It again reminded Wagoner to submit her list of witnesses and exhibits five days prior to the hearing.  Wagoner, p. 95, line 25 through p. 96, line 17; Wagoner Deposition Exhibit 8 (Notice of Hearing Procedures – Additional Witnesses and Exhibits).

36.     Wagoner's due process hearing before the Board of Education was held on December 17, 2015.  Wagoner was present at the hearing, but she was not represented by counsel.  All of the witnesses were sworn by the court reporter.  The School District called Wagoner, Gorton, and Crelia as witnesses, and Gorton and Crelia were cross-examined by Wagoner.  Members of the Board of Education also asked Wagoner and Gorton questions.  Wagoner called two witnesses, including a former colleague Michelle Manley and her mother Thelma Wagoner.  The School District admitted ten exhibits into evidence, all of which related to Wagoner's deficient job performance.  Wagoner did not present or seek the admission of any exhibits into evidence at the hearing.  Wagoner, p. 97, line 3 through p. 98, line 1; p. 98, lines 12-14; p. 99, line 13 through p. 100, line 7;

Wagoner Deposition Exhibit 10 (Minutes of Board Hearing); <u>Transcript of Due Process</u> <u>Hearing</u> (Exhibit 2 to this brief).

37.     After hearing the evidence presented at the due process hearing, the Board of Education adjourned to executive session to deliberate.   When the Board returned to open session, the Board accepted and voted to adopt the findings of fact and conclusions submitted by Superintendent Siano, thereby terminating Wagoner's employment with the District based upon the testimony and evidence presented at the hearing.  <u>Wagoner</u>, p. 98, line 19 through p. 99, line 6; Wagoner Deposition Exhibit 10.

38.     Wagoner has no evidence that the District's Board of Education based its decision to adopt Superintendent Siano's recommendation for her dismissal on anything other  than  the  evidence  presented  at  her  December  17,  2015  due  process hearing.  <u>Wagoner</u>, p. 131, lines 1-6.

39.     Wagoner  never  heard  any  District  administrators  or  any  other  District employees  make  any  negative  comments  about  her  race,  and  she  never  heard  anyone make negative comments about African-Americans in general.  <u>Wagoner</u>, p. 163, lines 9-25.

40.     Wagoner filed her Charge of Discrimination with the EEOC on June 2, 2016.   In her Charge, Wagoner only alleged discrimination based upon her race and disability.  <u>Charge of Discrimination</u> (Exhibit 3 to this brief).

14

## <u>Argument and Authorities</u>

### I.     The School District is Entitled to Judgment as a Matter of Law on Wagoner's Title VII and ADA Claims.

Wagoner's race and disability discrimination claims are subject to the well-known burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), because there is no direct evidence of discrimination.   Under this framework, (1) an employee must establish a *prima facie* case of discrimination; (2) the employer must then produce a legitimate, nondiscriminatory reason for the challenged action; and (3) then the employee bears the burden of proving the employer's proffered reason is pretext for discrimination.   *Id*. at 802-04; *see also Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012) and *EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1038-39 (10th Cir. 2011).

Wagoner may establish pretext "by showing the [School District's] proffered non-discriminatory explanations for its actions are 'so incoherent, weak, inconsistent, or contradictory that a rational factfinder could conclude [they are] unworthy of belief.'" *Johnson v. Weld County, Colo.*, 594 F.3d 1202, 1211 (10th Cir. 2010), *quoting Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1197 (10th Cir. 2008).   When making the determination "'whether the proffered reason for a decision was pretextual, [the court] examine[s] the facts as they appear to the person making the decision, [the court] do[es] not look to [Wagoner's] subjective evaluation of the situation[.]'"   *C.R. England, Inc.*, 644 F.3d at 1044, *quoting Zamora v. Elite Logistics, Inc.*, 478 F.3d 1160, 1166 (10th Cir. 2007) and *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1130 (10th Cir. 1998).

### A.      Wagoner's Race Discrimination Claim Under Title VII.

Wagoner alleges that the School District discriminated against her on the basis of her race because it required that she do more work and do more strenuous work for the same or less pay than other Caucasian or non-African American employees and that it ultimately terminated her employment.[1]  Specifically, Wagoner contends that other non-African American employees were not asked to sort through boxes or clear out their classrooms.  Wagoner, p. 132, line 20 through p. 133, line 3.

In order to establish a *prima facie* case of race discrimination, Wagoner must show:  (1) she "belongs to a protected class"; (2) she "suffered an adverse employment action"; and (3) "the challenged action took place under circumstances giving rise to an inference of discrimination."  *Faragalla v. Douglas County Sch. Dist. RE 1*, 411 Fed. Appx. 140, 155 (10th Cir. 2011), *quoting EEOC v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007).  The third element of the *prima facie* case can be established by showing "the employer treated similarly situated employees more favorably." *Id.*, *quoting PVNF*, 487 F.3d at 800-01; *see also Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir. 2005).  For purposes of summary judgment, the School District does not dispute that Wagoner belongs to a protected class as an African-American or that her termination constitutes adverse employment action.  However, based upon the undisputed

---

[1]  Wagoner alleged in her First Amended Complaint that she was discriminated against on the basis of her race by being required to work more hours than other employees outside the protected class.  However, at her deposition, she testified that she was not discriminated against based on her race in this regard.  Wagoner, p. 131, line 16 through p. 132, line 14.

facts, Wagoner cannot establish that she was treated less favorably than other similarly situated employees who were not in the protected class.

The undisputed facts establish that Wagoner's position as ELL Newcomer was a unique position, as it was the only position of its kind in the School District. The position was moved that school year to Wilson Elementary because of construction at the elementary school site where the position was originally assigned. *See* Undisputed Fact No. 3. This required that the ELL material moved from the former site be organized and reviewed by Wagoner in order to determine the curriculum she wanted to utilize with her students. Wagoner was offered the help of custodial and warehouse staff to remove materials from her room. Also, Mary Freiburger, a Caucasian and an ELL teacher at Wilson, assisted Wagoner in her new position, including assisting her with sorting and reviewing ELL materials, organizing, and setting up her classroom for students. *See* Undisputed Facts Nos. 5-7, 9. Moreover, even if Wagoner was required to clean out her room and organize it when other teachers were not, this does not constitute an adverse employment action. *See Faragalla*, 411 Fed.Appx. at 156 ("'[A] mere inconvenience or an alteration of job responsibilities' does not constitute an adverse employment action."), *quoting Piercy v. Maketa*, 480 F.3d 1192, 1203-04 (10th Cir. 2007) (holding that an employer's assignment of certain duties to only some employees with the same position did not rise to an adverse employment action).

Further, there is simply no evidence to support Wagoner's assertion that she suffered disparate treatment because of her race and that her termination was based upon her being a member of a protected class. The undisputed facts establish that Wagoner

never heard any administrators or employees of the District make any negative comments about her race or make any negative comments about African-Americans in general. *See* Undisputed Fact No. 39. The undisputed facts also establish that Wagoner's dismissal was based upon her deficient performance and not her race. *See* Undisputed Facts Nos. 22, 24, 32.

Even if Wagoner can meet her *prima facie* case for race discrimination, the School District had legitimate, nondiscriminatory reasons for requesting that Wagoner go through the materials and organize her classroom and for terminating her employment. The undisputed facts show that the ELL Newcomer position was moved from another site to Wilson Elementary, a move which had nothing to do with Wagoner. The former site was under construction. *See* Undisputed Fact No. 3. The undisputed facts also show that Wagoner's position required that she organize her classroom, prepare a curriculum for her students, and prepare lesson plans and schedules for student site visits. *See* Undisputed Facts Nos. 9, 12, 15, 16. The undisputed facts further establish that Wagoner was offered support from other teachers and from the administration and given several opportunities for improvement, yet her performance remained deficient. *See* Undisputed Facts Nos. 5-7, 15-16, 21-24, 28-30. Wagoner's dismissal from the District was not because of her membership in any protected class, but because of her deficient performance.

Finally, Wagoner cannot demonstrate the District's non-discriminatory reasons for its treatment of Wagoner were pretext for race discrimination. There is no evidence in the

record to suggest that race played any role in the District's employment decisions involving Wagoner.

Accordingly, Wagoner's race discrimination claim fails as a matter of law, and the School District is entitled to summary judgment.

### B.   Wagoner's Disability Discrimination Claims Under the ADA.

It appears from Wagoner's First Amended Complaint that she has alleged disability discrimination by the School District based upon the District's alleged failure to accommodate and based upon the termination of her employment.  Specifically, Wagoner alleges the School District discriminated against her based on her disability when it failed to accommodate her request to receive medical care or work the same hours as other teachers.  She asserts she was given less favorable assignments because of her disability, as evidenced by the fact that she had to set up her own classroom.  Wagoner asserts that the School District should have accommodated her by being more lenient and less demanding with its expectations for her job performance.  Wagoner, p. 146, line 22 through p. 147, line 21.  She contends that despite requests that she be allowed an accommodation, she was provided no interactive process and was retaliated against for seeking an accommodation.[2]

---

[2]   Wagoner has not specifically alleged an ADA retaliation claim in either her original Complaint or her First Amended Complaint.  *See* Docket Nos. 1 & 22.  To the extent the court believes she has alleged such a claim, Wagoner was required to exhaust her administrative remedies prior to filing suit on the claim.  Exhaustion of administrative remedies under the ADA is a jurisdictional prerequisite to filing suit, and the failure to exhaust by filing a proper charge of discrimination with the EEOC deprives the court of subject matter jurisdiction.  *See Jones v. United Parcel Serv.*, 502 F.3d 1176, 1183 (10th Cir. 2007) and *Shikles v. Spring/United Management Co.*, 426 F.3d 1304, 1317 (10th Cir.

### 1.     *Disability discrimination based on the failure to accommodate.*

To the extent Wagoner is alleging the School District failed to accommodate her alleged impairments in accordance with the ADA, she must show:  (1) she is a qualified individual with a disability, (2) her employer was aware of her disability, and (3) her employer failed to reasonably accommodate the disability.  *See Allen v. SouthCrest Hosp.*, 455 Fed. Appx. 827, 830 n.2 (10th Cir. 2011) (quotation omitted).  Although the School District believes it is arguable whether Wagoner can satisfy any of the elements necessary for her *prima facie* case, for purposes of summary judgment, the School District addresses only the final two elements.

The second element requires that an employer be aware of the employee's disability, as an employer is only required to make "reasonable accommodations" for the **known** physical and mental limitations of a qualified disabled individual.  *See* 42 U.S.C. § 12112(b)(5)(A) (emphasis added); *see also C.R. England, Inc.*, 644 F.3d at 1049 (explaining that an employee must make an adequate request for accommodation to put the employer on notice and that the request for accommodation should be sufficiently direct and specific).  Moreover, the interactive process is the term used to describe good-faith communications between an employer and disabled employee to identify the limitations resulting from a disability and potential reasonable accommodations that

---

2005).  In *Montes v. Vail Clinic, Inc.*, 497 F.3d 1160 (10th Cir. 2007), the Tenth Circuit explained that "a plaintiff can bring a lawsuit only for those 'unlawful employment practices' described in his or her administrative charge." *Id.* at 1166.  Here, Wagoner did not allege retaliation under the ADA in her Charge of Discrimination filed with the EEOC.  *See* Undisputed Fact No. 40.  Because Wagoner has failed to exhaust her administrative remedies with regard to an ADA retaliation claim, the court lacks subject matter jurisdiction to consider such a claim.

could overcome those limitations and enable the employee to perform the essential functions of the job. The interactive process does not begin until the employee has (1) notified the employer of his disability and the limitations it causes, and (2) requested a reasonable accommodation. *See* 29 C.F.R. § 1630.2(o)(3); *Bartee v. Michelin North America, Inc.*, 374 F.3d 906, 915 (10th Cir. 2004), *citing Templeton v. Neodata Services, Inc.*, 162 F.3d 617, 619 (10th Cir. 1998).

The undisputed facts demonstrate that Wagoner never notified the District of her disability and the limitations it causes or requested an accommodation from the School District. Wagoner met with District administration on several occasions from September 1, 2015, when she was hired, through November 11, 2015, when she was suspended for a second time, and she never told anyone she suffered from physical or mental limitations that required assistance in performing her job. *See* Undisputed Facts Nos. 8, 14, 22, 26, 28, 30. In fact, Wagoner testified that she does not believe that she started suffering from a disability until November of 2015, so she had no reason to request an accommodation from the District. <u>Wagoner</u>, p. 146, lines 12-21. Moreover, Wagoner testified that the School District never denied her the opportunity to schedule doctor's appointments or to attend any such appointments while she was employed by the District. *Id*., p. 126, lines 21-25.

The undisputed facts also demonstrate that it was not until Wagoner called Assistant Superintendent Brown on November 18, 2015, requesting FMLA paperwork, that she first informed District administration that she had a fibroid condition. However, Brown told Wagoner she was not eligible for leave under FMLA because she had not

been employed for one year.  *See* Undisputed Fact No. 31; *see also* 29 U.S.C. § 2611(2)(A) (defining an "eligible employee" under the FMLA as an employee who has been employed "(i) for at least 12 months by the employer with respect to whom leave is requested under Section 2612 of this title; and (ii) for at least 1,250 hours of service with such employer during the previous 12-month period.").  In any event, the District had already decided to pursue dismissal proceedings against Wagoner at the time she requested FMLA leave.  *See* Undisputed Fact No. 30.

The School District sought Wagoner's dismissal because of her deficient performance.  It did not know about any alleged disability of Wagoner, as she had not requested any type of accommodation.  Thus, the School District did not fail to reasonably accommodate Wagoner's alleged disability.

Further, there is no evidence that any failure by the School District to accommodate Wagoner demonstrates pretext.  Because Wagoner never requested a reasonable accommodation, there was no discriminatory motive by the District for not providing one.

### 2.    *Disability discrimination based on termination.*

To establish a *prima facie* case of disability discrimination relating to her termination, Wagoner must show:  (1) she is disabled as defined by the ADA; (2) she is qualified to perform the essential functions of the job with or without reasonable accommodation; and (3) she suffered discrimination on the basis of her disability.  *Hennagir v. Utah Dep't of Corrections*, 587 F.3d 1255, 1261 (10th Cir. 2009), *citing Kellogg v. Energy Safety Servs., Inc.*, 544 F.3d 1121, 1124 (10th Cir. 2008).  Again, the

School District questions whether Wagoner can establish the first two elements of her prima facie case, but for purposes of summary judgment, it will address only the final element.

As part of establishing the third element of her *prima facie* case, Wagoner must present evidence that her disability was a determining factor in the School District's decision to terminate her employment.  For disability to be considered a determining factor, it must have been a significant reason for the employment action.  It must have made such a difference in the outcome of events that without it the District would not have acted.  *Selenke v. Medical Imaging of Colorado*, 248 F.3d 1249, 1259 (10th Cir. 2001), *quoting Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997).  "An employee cannot state a cause of action for disability discrimination when her employer terminates her for reasons unrelated to a disability."  *Bones v. Honeywell Intern., Inc.*, 366 F.3d 869, 878 (10th Cir. 2004).

Wagoner has no evidence that she was terminated by the School District because of her disability.  The undisputed facts establish that no one in District administration was even aware that Wagoner suffered from any type of medical condition until November 18, 2015, when she called Assistant Superintendent Brown and requested FMLA paperwork.  *See* Undisputed Fact No. 31.  The undisputed facts show that on November 11, 2015, when Wagoner was suspended for the second time, Brown had notified Wagoner of the Superintendent's intent to recommend her dismissal to the Board of Education based on her deficient performance.  *See* Undisputed Fact No. 30.  On November 19, 2015, Superintendent Siano submitted the recommendation for Wagoner's

dismissal to the Board of Education, outlining in detail the continued deficiencies in Wagoner's job performance since she began her employment with the District on September 1, 2015. *See* Undisputed Fact No. 32.

Even if Wagoner meets her *prima facie* case for disability discrimination based on her termination, the School District had a legitimate, non-discriminatory reason for its action. Wagoner did not consider herself disabled until November of 2015. Wagoner, p. 146, lines 12-21. The undisputed facts show that her poor job performance stemmed back to September of 2015, continued throughout October of 2015, and into November of 2015. *See* Undisputed Facts Nos. 13, 17-22, 24-29. Wagoner's deficient performance, even with the continued assistance and support by the District to improve, was a legitimate reason to terminate her employment.

Finally, there is no evidence that the termination of Wagoner's employment was for any other reason than because of poor job performance. Thus, Wagoner cannot establish that the District's proffered reason is a pretext for discrimination.

Accordingly, Wagoner's disability discrimination claim based upon any alleged failure to accommodate or based upon her termination fails as a matter of law, and the School District is entitled to summary judgment.

## II. The School District Is Entitled to Judgment as a Matter of Law on Wagoner's Fourteenth Amendment Due Process Claim.

The Tenth Circuit has explained the analysis to be followed in addressing a public employee's claim of termination without due process: "To assess whether an individual was denied procedural due process, courts must engage in a two-step inquiry: (1) did the

individual possess a protected interest such that the due process protections were applicable; and, if so, then (2) was the individual afforded an appropriate level of process." *Brammer-Hoelter v. Twin Peaks Charter Academy*, 492 F.3d 1192, 1209 (10th Cir. 2007), *quoting Montgomery v. City of Ardmore*, 365 F.3d 926, 935 (10th Cir. 2004); *see also Ripley v. Wyoming Medical Center, Inc.*, 559 F.3d 1119, 1122 (10th Cir. 2009) (citations and internal quotations omitted).

Federal courts look to state law to determine whether an individual has a property interest in employment. *Brammer-Hoelter*, 492 F.3d at 1209; *see also Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). The undisputed facts establish that Wagoner was a probationary teacher employed by the District on a temporary teacher contract. *See* Undisputed Fact No. 2. Pursuant to Oklahoma law, Wagoner was entitled to the substantive and procedural rights set forth in the Oklahoma Teacher Due Process Act and could be terminated only for cause. *See* OKLA. STAT. tit. 70, §§ 6-101.22(B), 6-101.23(B). Wagoner therefore had a property interest in continued employment under Oklahoma law.

"The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Brammer-Hoelter*, 492 F.3d at 1209; *see also Seabourn v. Independent Sch. Dist. No. I-300 of Woodward County*, 775 F. Supp. 2d 1306, 1311 (W.D. Okla. 2010) ("The root of the due process clause requires that an individual be given an opportunity for a hearing before she is deprived of any significant property interest."). In accordance with Oklahoma law, OKLA. STAT. tit. 70, §§ 6-101.25, the undisputed facts establish that Wagoner was provided written notice of the

recommendation for her termination and the reasons therefore. *See* Undisputed Fact No. 33. Wagoner received a due process hearing before the School District's Board of Education at which time she was afforded the opportunity to be represented by counsel (although she represented herself), heard the evidence against her, was allowed to cross examine witnesses, testified in her own behalf, and called her own witnesses. *See* Undisputed Fact No. 36; OKLA. STAT. tit. 70, § 6-101.26. Wagoner has no evidence that the Board's decision was based upon anything other than the evidence presented at the hearing. *See* Undisputed Fact No. 38. Because the undisputed facts establish that Wagoner received more than adequate due process protections, the School District is entitled to judgment as a matter of law on Wagoner's claim that she was deprived of property without due process of law.

### III.   Wagoner's OADA Claim Fails as a Matter of Law.

Wagoner has alleged race and disability discrimination which is prohibited under the OADA. OKLA. STAT. tit. 25, §§ 1302, 1350. Because the protections are "co-extensive," if a plaintiff cannot show discrimination under Title VII or the ADA, the OADA claim must fail. *See Hamilton v. Oklahoma City University*, 911 F. Supp. 2d 1199, 1206 (W.D. Okla. 2012) (noting that the ADA and OADA both prohibit employee discrimination based on disability and finding that "[b]ecause the protections provided by the OADA are 'coextensive with the protections provided by federal law under the ADA,' a plaintiff's OADA claim fails 'if her federal discrimination claims fail.'"), *quoting McCully v. American Airlines, Inc.*, 695 F. Supp. 2d 1225, 1246-47 (N.D. Okla. 2010) ("The Tenth Circuit has determined that a plaintiff's OADA claim fails if her

federal discrimination claims fail."); *see also Bennett v. Windstream Communications, Inc.*, 30 F.Supp.3d 1243, 1259 (N.D. Okla. 2014).   Thus, because Wagoner's race and disability discrimination claims have failed, her OADA claim must also fail.   The School District is entitled to summary judgment.

### IV.   Wagoner's Breach of Contract Claim Fails as a Matter of Law.

Wagoner alleges the School District breached her employment contract because it terminated her employment without cause. In order to prevail on a breach of contract theory, Wagoner must show:   (1) the formation of a contract, (2) the breach of the contract, and (3) damages as a direct result of the breach.   *See Digital Design Group, Inc. v. Information Builders, Inc.*, 2001 OK 21, ¶ 33, 24 P.3d 834, 843.

Wagoner cannot establish that the School District breached her employment contract.   She was hired by the School District as a probationary teacher on a temporary teacher contract.   *See* Undisputed Fact No. 2.   Pursuant to the terms of her contract and consistent with Oklahoma law, her contract would either expire at the end of the contract period (at the end of the school year or on June 30, 2016), or if the District sought Wagoner's dismissal prior to the contract's expiration, Wagoner was entitled to receive all the rights set forth by the Oklahoma Teacher Due Process Act of 1990 that would be afforded to a probationary teacher.   Wagoner Deposition Exhibit 1 (Temporary Teacher Contract), ¶ 6; *see also* OKLA. STAT. tit. 70, §§ 6-101.22(B) & 6-101.23(B).

As outlined above in Section II, and in accordance with Oklahoma law, Superintendent Siano recommended Wagoner's dismissal to the Board of Education based upon her continued deficient job performance.   She was provided a hearing before

the Board, along with all the rights to which she was lawfully entitled, and the Board of Education determined cause existed for her dismissal and thereby adopted Superintendent Siano's recommendation and terminated her employment.  OKLA. STAT. tit. 70, §§ 6-101.25, 6-101.26.

Accordingly, cause existed to terminate Wagoner's contact, and it was therefore not breached by the District.  The School District is entitled to summary judgment on Wagoner's breach of contract claim.

## Conclusion

For the reasons and arguments stated and addressed herein, the School District requests that its motion for summary judgment be granted.

**Respectfully submitted,**

**ROSENSTEIN, FIST & RINGOLD**

**By:**  *s/ John E. Priddy*
**Karen L. Long, OBA No. 5510**
**John E. Priddy, OBA No. 13604**
**Jerry A. Richardson, OBA No. 10455**
**Staci L. Roberds, OBA No. 18985**
**525 South Main, Suite 700**
**Tulsa, OK  74103**
**Telephone:  (918) 585-9211**
**Facsimile:   (918) 583-5617**
**karenl@rfrlaw.com**
**johnp@rfrlaw.com**
**jerryr@rfrlaw.com**
**sroberds@rfrlaw.com**

**Attorneys for the Norman School District**

28

## CERTIFICATE OF SERVICE

I hereby certify that on July 31, 2017, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF System for filing and emailed and mailed by both United States First Class Mail and United States Certified Mail Return Receipt Requested, with sufficient postage prepaid thereon, a true and correct copy of the document to the following, who is not a registered participant of the ECF system:

Thalia D. Wagoner
1430 NW 104th Street
Oklahoma City, Oklahoma  73114
Thalia_w_2001@yahoo.com

***Pro se Plaintiff***

*s/ John E. Priddy*
**John E. Priddy**